UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA *ex rel.* TRENTON THACH,**<br><br>    Plaintiffs,<br><br>v.<br><br>**THACH BATTERY, INC., and TERRY THACH.**<br><br>    Defendants. | **CIVIL ACTION**<br><br>**NO.: 1:22-CV-03712-MLB** |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF-RELATOR'S AMENDED COMPLAINT

COMES NOW Defendants Thach Battery, Inc. ("Thach Battery") and Terry Thach ("Terry Thach") (collectively, "Defendants"), and pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), move to dismiss the Amended Complaint for Damages and Other Relief Under the Federal False Claims Act ("FCA") (31 U.S.C. § 3730 *et seq*.) ("Amended Complaint") filed by Plaintiff-Relator United States of America *ex rel*. Trenton Thach ("Trenton Thach" or "Relator").

### I.     INTRODUCTION.

Relator Trenton Thach alleges Defendants "misbranded" unspecified "batteries" within their "general inventory" and that—***based purely on Relator's speculation***—a "portion" of those "batteries" ***may*** (or may not) have ended up in

1

vaguely-described shipments to federal and Georgia governmental customers ***nearly a decade ago***. (Dkt. 29, ¶¶ 1, 8, 13). In fact, all the Relator ultimately hypothesizes is that "[f]ederal and state entities cannot be certain they are receiving new batteries or misbranded batteries…." (*Id.*, at ¶¶ 141-142).

Defendants vigorously dispute the veracity of Relator's allegations. However, for purposes of this Motion to Dismiss, the central issue is that Relator's vague and speculative allegations fall far short of Rule 9(b)'s heightened pleading requirements (which requirements govern FCA claims). Indeed, despite claiming twenty years of insider access, Relator fails to allege a ***single instance*** where:

- a specific misbranded battery was placed into a shipment for a government entity;

- a government entity complained about receiving a "misbranded" or used battery;

- a battery sold to a governmental entity by Defendants failed prematurely in a manner suggesting misbranding;

- a government claim form submitted by Defendants contained a false statement; or

- any government payment was conditioned on representations that Defendants allegedly falsified.

2

In fact, Relator does not even allege that the batteries sold to governmental entities were of the same type he allegedly saw being "misbranded."

Correspondingly, Relator's speculative allegations fail to link the purported "misbranding" issue to any of the eighteen (18) example "claims" listed in Section VI, Paragraphs 137–139[1] of the Amended Complaint (all of which occurred many years ago). For example, Relator failed to provide any information whatsoever regarding the nature of Defendants' contractual obligations to the listed governmental entities, the substance of the claim forms submitted by Defendants to those entities, or the nature of Defendants' allegedly false representations to those entities. Relator's failure to supply these missing allegations directly contravenes binding Eleventh Circuit precedent holding that a relator must specifically plead the actual submission of a false claim—not just a generalized fraudulent "scheme." *See U.S. ex rel. Clausen v. Lab'y Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002) ("Rule 9(b)… does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted[.]").

Additionally, Relator has failed to allege any specific facts indicating that the "misbranding" he allegedly witnessed—**which Relator failed to tie to any specific**

---

[1] Plaintiff's Amended Complaint stops at Paragraph 143 on page 19, and repeats Paragraphs 137 through 143 on pages 20 through 22. (*See* Dkt. 29, pp. 19 through 22).

3

*battery shipment to a governmental entity*—was in any way "material" to any governmental entity's decision to pay. The United States Supreme Court itself has held that "[t]he [FCA's] materiality standard is *demanding*," and, "**[t]he [FCA] is not an all-purpose antifraud statute…or a vehicle for punishing garden-variety breaches of contract or regulatory violations**." *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 194 (2016) (*Escobar*) (citation and quotations omitted) (emphasis added). Relator's woefully insufficient "materiality" allegations are particularly problematic here in light of both (1) the speculative nature of his allegations, and (2) the complete absence of indicia that any governmental entity was actually harmed (*i.e.*, there is a complete absence of allegations demonstrating the batteries actually sold to the governmental entities at issue failed to perform as expected).

Finally, Relator cannot assert claims under the federal FCA for allegedly false claims made to Georgia state and local entities for the simple reason that the FCA is a *federal* statute that generally only applies to claims submitted to *federal* entities. Accordingly, Relator's FCA claims should be dismissed pursuant to Rules 9(b) and 12(b)(6).

II.     **FACTUAL BACKGROUND.**

A.     **Allegations in the Complaint.**

Relator alleges he worked at Thach Battery and its affiliate All Battery Center from 2001 to 2021. (Dkt. 29, ¶¶ 76–78). Relator alleges he occasionally saw employees re-label "spent" or "blemished" "batteries" as new and place them into the "general inventory." (*Id.*, at ¶¶ 8, 122-123). Notably, Relator provides no description of the specific type of "batteries" he purportedly saw being "mislabeled" (*e.g.*, model type, serial numbers, *etc.*), nor does Relator draw any connection between these unspecified "batteries" and those sold to the governmental entities at issue. Relator also alleges no facts regarding how the "general inventory" was managed or how batteries within that inventory were allocated to customers.

Relator alleges that, as a result of this vaguely-described "mislabeling," "[f]ederal and state entities cannot be certain they are receiving new batteries or misbranded batteries…." (*Id.*, at ¶¶ 141-142). Relator does ***not*** allege "misbranded" batteries were actually sold to any governmental entity. In fact, Relator does ***not*** even allege that the batteries sold to the governmental entities at issue were of the same type he allegedly saw being "misbranded" (despite the fact that Relator's own Amended Complaint describes multiple shipments of widely varying order sizes and amounts, indicating they were not all for the same battery type).

Relator does not allege that any governmental entity complained about the quality of the batteries received. Nor does Relator allege that any of those batteries failed prematurely, or otherwise exhibited problems indicating "misbranding."

Relator lists eighteen (18) supposed "examples" of "claims paid by federal and Georgia state entities," but they include only a customer name, aggregate dollar amount, and a date range. (*Id.*, at Section VI, ¶¶ 137–139). Relator's high-level allegations include **no** description of the batteries sold, **no** invoice numbers, **no** description of any claim form, and **no** allegation that any of these shipments actually contained an allegedly "misbranded" battery. Indeed, Relator provides **no** allegations describing what those governmental entities contracted for or what Defendants represented to those entities about the listed battery shipments. Correspondingly, Relator fails to clearly allege why he believes the vaguely-described "claims" at issue were purportedly "false."

### B.   Procedural History.

Plaintiff filed his Initial Complaint for Damages and Other Relief under the Federal False Claims Act (31 U.S.C. § 3730 *et seq*.) ("Initial Complaint") on September 15, 2022. (Dkt. 1). On February 11, 2025, Plaintiff filed his Amended Complaint. (Dkt. 29). The Amended Complaint alleges FCA claims against Defendants for: (1) presentation or causing the presentation of false claims (31 U.S.C. § 3729(a)(1)(A)); (2) making or using a false record or statement to cause a

6

claim to be paid (31 U.S.C. § 3729(a)(1)(B)); (3) making or using false record or statement to avoid an obligation to refund (31 U.S.C. § 3729(a)(1)(G)); and (4) fraudulent inducement (31 U.S.C. § 3729(a)(1)(G)). (*Id.*, at ¶¶ 152–168).

Defendants filed their Motion to Stay Pending Appeal of a Dispositive Case ("Motion to Stay") on March 6, 2025. (Dkt. 37). The Court denied Defendants' Motion to Stay on November 14, 2025. (Dkt. 43).

## III. ARGUMENT AND SUPPORTING AUTHORITIES.

### A. Claims Involving Georgia State Entities Must Be Dismissed.

Fifteen (15) of the eighteen (18) "claims" identified by Relator relate to Georgia state or local governmental entities—***not federal entities***. The FCA only applies to claims presented directly to federal officers, employees, or agents.[2] *See* 31 U.S.C. § 3729(b)(2)(A)(i)-(ii) (a "claim" must either be "presented to an officer, employee, or agent of the United States" or "made to a contractor, grantee, or other recipient, if the money or property is be spent or used on the Government's behalf or to advance a Government program or interest…").

Put simply, the FCA is a ***federal*** statute, and is applicable only to false claims made to ***federal*** governmental entities (or entities receiving ***federal*** funds in limited circumstances). *See U.S. ex rel. Atkins v. McInteer*, 345 F. Supp. 2d 1302, 1304

---

[2] In some situations, the FCA applies to claims against non-federal agencies who received federal funding. However, the Amended Complaint provides no allegations whatsoever even implying this limited exception has any applicability here.

7

(N.D. Ala. 2004), *aff'd,* 470 F.3d 1350 (11th Cir. 2006) (*McInteer I*) ("[F]raud perpetrated upon a non-federal agency cannot form the basis for an FCA claim just because the non-federal agency thereafter presents a claim for payment to a federal official."). This statutory limitation must be strictly enforced. *Id.* ("Because the FCA has a quasi-criminal aspect…it must be strictly construed against the United States and the relator.").

Because Relator identifies ***no*** federal funds, federal involvement, or federal decision for these state and local transactions, Relator's FCA claims arising from these state and local transactions must be dismissed under binding precedent.

### B.     Relator's Amended Complaint Lacks Particularly Under Rule 9(b).

The enhanced pleading standard under Rule 9(b) applies to *qui tam* actions under the FCA. *See Gose v. Native Am. Servs. Corp.*, 109 F.4th 1297, 1306 (11th Cir. 2024). In fact, Rule 9(b)'s heightened pleading requirements apply with "special force" to FCA claims. *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 2020 WL 1245374, at *5 (M.D.N.C. Mar. 16, 2020), *aff'd*, 42 F.4th 185 (4th Cir. 2022) ("Rule 9(b) applies with special force to claims brought under the FCA.") (international quotations and citations omitted).

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A complaint may satisfy Rule 9(b) if it states:

(1) precisely what statements were made in what documents or oral representations or what omissions were made, and

(2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and

(3) the content of such statements and the manner in which they misled the plaintiff, and

(4) what the defendants "obtained as a consequence of the fraud."

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (citations omitted).

In the FCA context, a relator must additionally specifically plead the actual submission of a false claim—not just a generalized fraudulent "scheme." *Clausen*, 290 F.3d at 1311 (11th Cir. 2002) ("Rule 9(b)… does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government.").

The necessary corollary to this rule is that where a relator fails to include a "description in the complaint of any discrete incident of the fraudulent submission of a claim by any defendant," the relator's claim must be dismissed under Rule 9(b). *McInteer I*, 345 F. Supp. 2d at 1305. As the Eleventh Circuit has held, "the submission of a [false] claim is…the *sine qua non* of a False Claims Act violation," and Rule 9(b) requires "some indicia of reliability…to support the allegation *of an*

9

*actual false claim* for payment being made to the Government." *U.S. ex rel. Atkins v. McInteer,* 470 F.3d 1350, 1357 (11th Cir. 2006) (internal quotations and citations omitted) (italics in original).

"**General averments do not suffice, no matter how difficult it may be for a relator to meet the stringent requirement of particularity without first obtaining court aided access to discovery materials from defendant**." *McInteer I,* 345 F. Supp. 2d at 1305 (emphasis added). "The whistle must be blown not only loudly, but with [Fed. R. Civ. P.] 9(b) particularity in the complaint before the courts will listen." *Id.* Rule 9(b)'s stringent requirements are critical for "alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1307 (11th Cir. 2022) (citation and internal quotations omitted). "This second purpose is especially important in [FCA] cases filed by relators; in such cases the rule ensures that the relator's strong financial incentive to bring an FCA claim…does not precipitate the filing of frivolous suits." *Gose*, 109 F.4th at 1317.

Relator's Amended Complaint relies on generalized allegations of battery "misbranding" without (1) identifying the requisite details of the alleged "false claims" at issue; or (2) tying the generalized "misbranding" allegations to the vaguely-described "false claims." Indeed, Relator's listed "specific examples" of

10

purported "false claims" are nothing more than aggregate counts and dollar totals of shipments of unspecified "batteries" without more. Relator's allegations are notably devoid of: (1) the specific false claims Defendants submitted to the governmental entities at issue, including any description of Thach Battery's contracts with, or representations to, those entities; (2) the specific dates Defendants submitted these vaguely-described "claims"[3]; (3) the claim numbers or invoice identifiers associated with the alleged "claims"[4]; (4) the precise misrepresentations tied to any particular payment to the Defendants; or (5) a description of the type of batteries sold. (*See generally* Dkt. 29, ¶¶ 6, 7, 10, 14, 15, 95, 137). Relator also does not allege that any supposed "misbranding" he observed occurring during the same time period as the listed "examples" of battery shipments.

In short, Relator fails to allege the essential transaction-level details that Rule 9(b) demands: the description of any battery shipped to a government entity, the content of any invoice or claim form, the certifying language accompanying any claim, or any representation actually made to a government customer. Relator's allegations are not tied to discrete claims, transactions, or communications with

---

[3] Relator alleges broad, yearslong time periods (*e.g.*, "between November 1, 2017 to October 31, 2018" and "between 2016 and 2021"), but fails to allege any specific dates tied to specific transactions. (*See generally* Dkt. 29, Section VI, ¶¶ 137-139).
[4] This is particularly problematic because it is unclear whether Defendants themselves even made some of the shipments (*i.e.*, it appears some of these shipments may have been made by battery dealers other than Defendants).

11

federal or state government officials, and thus fail to meet the threshold pleading standard under Rule 9(b).

**Moreover, and as described above, Relator does not allege that the vaguely-described battery shipments at issue actually contained "misbranded" batteries**. For example, Relator does *not* allege that (1) he personally saw a "misbranded" battery placed in a shipment to a governmental entity, (2) that someone told him a "misbranded" battery was shipped to a governmental entity, (3) that a governmental entity ever complained about receiving a "misbranded" battery, (4) that any battery sold to a governmental entity failed prematurely (or had other issues plausibly indicating the battery were "misbranded"); or (5) that the batteries covered by the shipments at issue were of the same type Relator purportedly saw being "misbranded." In short, Relator does *not* allege "misbranded" batteries were actually sold to governmental entities, but instead merely *speculates* that "federal and state entities simply cannot be certain" whether they received new or misbranded batteries. (Dkt. 29, ¶ 142).

For these reasons, Relator's claims should be dismissed for failure to comply with the heightened pleading requirements of Rule 9(b).

**C.   The Amended Complaint Fails to Plead Materiality Under *Escobar*.**

To adequately plead a FCA claim, Plaintiff must also demonstrate that "the [defendant's alleged] statement was material to a false claim." *See United States ex*

*rel. Dildine v. Pandya*, 389 F. Supp. 3d 1214, 1219 (N.D. Ga. 2019). In the FCA context, "materiality look[s] to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation." *Escobar*, 579 U.S. at 193 (citation and quotations omitted). As the United States Supreme Court has articulated, "[t]he materiality standard is ***demanding***," and states in no uncertain terms that:

> **The [FCA] is not an all-purpose antifraud statute, [citation omitted] or a vehicle for punishing garden-variety breaches of contract or regulatory violations**. A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance. **Materiality, in addition, cannot be found where noncompliance is minor or insubstantial**.

*Id.* at 194 (citations omitted) (emphasis added). In summary, *Escobar* requires not only that the defendant made a representation to the government regarding compliance with a regulatory or contractual requirement, but that compliance with that requirement would have actually mattered to the government's payment decision. *Id.*, at 193–95.

      As described above, Relator's central shortcoming is his failure to specifically allege the supposed "false" claims/statements at issue. Having not identified the particular claim, statement, or certifying language at issue, Relator cannot plausibly allege materiality because the Court cannot assess whether ***unidentified*** statements were capable of influencing payment or actually did influence payment.

13

Regardless, the Amended Complaint is completely devoid of well-pleaded allegations demonstrating "materiality." On that point, Relator includes just one paragraph vaguely alleging that Defendants violated **unidentified** "material contractual obligations." (Dkt. 29, ¶ 19). However, Relator fails to cite any particular "contractual obligations" or attach any exhibits that reference Defendants' "contractual obligations" to the governmental entities at issue. Instead of supplying that necessary information, Relator instead merely cites to federal and state regulations generically precluding fraud (*i.e.*, FAR Parts 3.10 *et al.* and 23.103 *et al.*, as well as Georgia Procurement Manual § I.3.7.1). (*Id.*, at ¶¶ 19, 22). However, this surface-level allegation—*i.e.*, a mere citation to generic statutes/regulations—is **precisely** the type of allegation that the United States Supreme Court has held does **not** establish materiality. *See Escobar*, 579 U.S. at 194 ("A misrepresentation **cannot be deemed material** merely because the Government designates compliance with a particular, statutory, regulatory, or contractual requirement as a condition of payment.") (emphasis supplied). Moreover, Relator does not allege that any of these regulations were incorporated into a specific contract with a governmental entity or that any contract conditioned payment on the "newness" or age of a battery.

Further, the Amended Complaint does not allege that any governmental entity ever complained that the batteries it purchased did not perform as expected. These missing performance allegations are particularly important here given the

14

speculative nature of Relator's allegations. As discussed above, Relator does not allege that "misbranded" batteries were actually sold to governmental entities, but instead merely alleges, "[f]ederal and state entities cannot be certain they are receiving new batteries or misbranded batteries[.]" (Dkt. 29, ¶¶ 141-142).

If supposed "misbranded" batteries were actually sold in any meaningful quantity to governmental entities, one would expect that at least one government purchaser would have lodged a complaint or returned a shipment—but there are no allegations in the Amended Complaint even implying such an event occurred. The absence of such allegations strongly undermines any plausible inference of "materiality"—especially when considering the highly speculative nature of Relator's allegations. This conclusion is supported by the fact that, even when given the opportunity to intervene and take over prosecution of the case, the federal government declined to do so. (*Id.*, at ¶ 43). While government non-intervention is not dispositive, courts have recognized it as relevant to the materiality inquiry. *See, e.g.*, *United States ex rel. Petratos v. Genentech*, 855 F.3d 481, 490 (3d Cir. 2017) ("And in those six years, the Department of Justice has taken no action against Genentech and declined to intervene in this suit.").

In summary, Relator only alleges in a conclusory fashion that it is hypothetically possible "misbranded" batteries may (or may not) have been shipped to government entities nearly a decade ago, and such shipments may (or may not)

have complied with unidentified contract terms. Further, the Amended Complaint indicates by omission that even if these speculative shipments of "misbranded" batteries actually occurred, no harm resulted to the government, which indicates that any "misbranding" issue was exceedingly minor—to the extent the issue existed at all. This is precisely the type of "insubstantial" conduct the United States Supreme Court has held does not fall within the FCA's ambit. *Escobar*, 579 U.S. at 193 ("Materiality, in addition, cannot be found where noncompliance is minor or insubstantial.").

Because Relator has not alleged facts demonstrating the requisite "materiality" element of his FCA claims, those claims should be dismissed under Rule 12(b)(6).

### D. Relator's Amended Complaint Fails to State a Plausible Claim Under Rule 12(b)(6).

Rule 12(b)(6) requires dismissal of a complaint when it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*Bell Atl. Corp. v. Twombly*, 550 U.S. at 570). The Supreme Court has further articulated that:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [citation omitted] The plausibility

16

>  standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Id.* Where the Relator has not met the facial plausibility standard, the Court must dismiss the complaint.

For claims alleged under 31 U.S.C. § 3729(a)(1)(A) (*i.e.*, presenting or causing to be presented "false or fraudulent claim for payment or approval"), a relator must prove: "(1) a false or fraudulent claim, (2) which was presented, or caused to be presented, for payment or approval, (3) with the knowledge that the claim was false." *Pandya*, 389 F. Supp. 3d at 1219. For claims alleged under 31 U.S.C. § 3729(a)(1)(B) (*i.e.*, making, using or causing to be made or use "a false record or statement material to a false or fraudulent claim"), the relator must show: (1) "the defendant made (or caused to be made) a false statement, (2) the defendant knew it to be false, and (3) the statement was material to a false claim." *Id.* The Eleventh Circuit has recognized that both provisions share the same underlying elements of "the existence of a false claim or statement, the materiality of that false claim or statement, and scienter." *Gose*, 109 F.4th at 1309.

Relator cannot meet this threshold burden because, as described above, he has not identified with any specificity any false claim or statement that was made to a federal or state governmental entity by Defendants. Relator's vague allegations do not plausibly establish that (1) Defendants actually sold a misbranded battery to a governmental entity, or (2) that Defendants misrepresented to any governmental

17

entity what they were actually selling. Therefore, the Amended Complaint should be dismissed under Rule 12(b)(6) for failing to allege facts that plausibly satisfy the required elements for FCA claims.

## IV. CONCLUSION.

For the foregoing reasons, the Court should dismiss Relator's Amended Complaint for improperly alleging claims against Georgia state and local entities under the federal FCA, failure to satisfy Rule 9(b), failing to demonstrate that the alleged false claims were material, and failure to state a claim under Rule12(b)(6).

Respectfully submitted this 5th day of December 2025.

**CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY, P.C.**

*/s/ John C. Guin*
John C. Guin
Georgia Bar No. 219846
Chadd L. Reynolds
Georgia Bar No. 876465
191 Peachtree Street, N.E.,
Forty-Sixth Floor
Atlanta, Georgia 30303
P: (404) 659-1410
john.guin@chamberlainlaw.com
chadd.reynolds@chamberlainlaw.com
*Attorneys for Defendants*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rules 5.1(B) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font and size requirements and is formatted in 14-point Times New Roman font.

*/s/ John C. Guin*
John C. Guin
Georgia Bar No. 219846
Chadd L. Reynolds
Georgia Bar No. 876465
191 Peachtree Street, N.E.,
Forty-Sixth Floor
Atlanta, Georgia 30303
P: (404) 659-1410
john.guin@chamberlainlaw.com
chadd.reynolds@chamberlainlaw.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that I have, this date, filed electronically the foregoing ***MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF-RELATOR'S AMENDED COMPLAINT*** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification to the following attorneys of record:

| Robert H. Snyder, Jr.<br>**CANNELLA SNYDER LLC**<br>315 W. Ponce de Leon Avenue<br>Suite 885<br>Decatur, Georgia 30030<br>rob@cannellasnyder.com<br>***Primary Counsel for Plaintiff-Relator*** | J. Rutledge Young, III<br>Robert L. Wehrman<br>**DUFFY & YOUNG, LLC**<br>96 Broad Street<br>Charleston, South Carolina 29401<br>ryoung@duffyandyoung.com<br>rwehrman@duffyandyoung.com<br>***Pro hac vice for Plaintiff-Relator*** |
|---|---|

Respectfully submitted this 5th day of December 2025.

**CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY, P.C.**

*/s/ John C. Guin*
John C. Guin
Georgia Bar No. 219846
Chadd L. Reynolds
Georgia Bar No. 876465
191 Peachtree Street, N.E.,
Forty-Sixth Floor
Atlanta, Georgia 30303
P: (404) 659-1410
john.guin@chamberlainlaw.com
chadd.reynolds@chamberlainlaw.com